## STATE BOARD OF TAX APPEALS.

1943 Assessment.

SOCONY-VACUUM OIL CO., INC., PETITIONER, v. BOROUGH OF EDGEWATER, RESPONDENT.

1944 Assessment.

BOROUGH OF EDGEWATER, PETITIONER, v. SOCONY-VACUUM OIL CO., INC., RESPONDENT.

Decided June 5, 1945.

For Socony-Vacuum Oil Co., Inc., J. Vincent Barnitt.

For the Borough of Edgewater, *Milton T. Lasher.*

WAESCHE, President. For the year 1943 the assessor of the Borough of Edgewater in the County of Bergen levied an assessment against oil owned by the Socony-Vacuum Oil Co., Inc., a corporation of the State of New York. For the year 1944 he levied another assessment against oil owned by said corporation. The assessment for each of these two years was appealed to the Bergen County Board of Taxation, which Board sustained the 1943 assessment, but set aside and canceled the 1944 assessment. The oil company appealed to the Division of Tax Appeals the judgment of the County Board on the 1943 assessment, and the Borough appealed the judgment on the 1944 assessment. The two appeals were heard together by the Division of Tax Appeals, and this opinion deals with both appeals.

The facts relating to the property assessed are undisputed, and they are the same for each assessment. The single issue in dispute is whether the oil was in continuous transit through New Jersey from one state to another state. It is contended for the Borough of Edgewater that its journey terminated in Edgewater.

Socony-Vacuum Oil Co., Inc., owns an oil refinery situated on the East River in King's County, New York, where it processes high-octane gasoline from a partially refined crude oil, known in the trade as cracking stock. The oil is shipped to the refinery on the East River from Texas and Oklahoma. Prior to the war, this cracking stock was carried in tankers by sea from Houston, Texas, to the company's plant on Long Island. During 1942 and 1943 so many oil tankers were being sunk along the Atlantic seaboard by enemy submarines that the oil company was forced to discontinue the transportation of oil by sea from Texas to New York. At this time the United States Army and Navy were in urgent need of high-octane gasoline, and they took the entire output of this gasoline manufactured by the Socony-Vacuum Oil Company at its aforesaid King's County refinery. Since the flow of this cracking stock from Texas to New York was effectively shut off by sea, the Socony-Vacuum Oil Company's only recourse was to ship the stock by rail in tank cars. The tank cars carrying this product from the Texas and Oklahoma oil fields arrived in New Jersey on the west bank of the Hudson River, and ordinarily would have been taken by car floats across the river to New York. But the abnormal increase in traffic moving in New York Harbor due to the war created a demand for car floats in excess of the number available. Consequently the United States Office of Defense Transportation requested the Socony-Vacuum Oil Company to empty the tank cars bringing cracking stock for their East River plant immediately upon their arrival at tide water in New Jersey, so that these cars could be returned as quickly as possible to the oil fields for more oil.

In June, 1942, the Socony-Vacuum Oil Company leased from the Valvoline Oil Company for one year, starting June 15th, 1942, one 55,000-barrel, stationary oil tank located in

Edgewater at the plant of the Valvoline Oil Company. It was agreed that said tank would be used exclusively by the Socony-Vacuum Oil Company for the purpose of unloading railroad tank cars carrying cracking stock from Texas and Oklahoma for the manufacture of 100-octane aviation gasoline. It was also agreed that the oil would be transferred from said tank to oil barges for movement to New York, except for small quantities that may be taken in railroad tank cars. The Socony-Vacuum Oil Company had estimated that it would require facilities for unloading approximately thirty railroad tank cars per day, and the Valvoline Oil Company agreed that it would furnish those facilities. In June, 1943, the aforesaid lease was renewed for another year.

As the oil arrived by rail in tank cars at Edgewater, New Jersey, it was immediately pumped into this 55,000-barrel tank, and the cars were then free to return at once to the oil fields for refilling. From the 55,000-barrel tank in Edgewater the oil was transferred almost immediately (within twelve to forty-eight hours) to oil barges, in which it was taken to the company's refinery in New York. The oil was not separated or treated in New Jersey; it was not sold in New Jersey. It was not sold until after it had been processed in New York.

During the transition of this oil from railroad tank car to oil barge, some portion of it was assessed for taxes for the years 1943 and 1944 by the assessor of Edgewater as it passed through the 55,000-barrel tank.

In the case of *Lehigh and Wilkes-Barre Coal Co.* v. *Junction,* 75 *N. J. L.* 922, 927; 68 *Atl. Rep.* 806, the Court of Errors and Appeals held that "To obtain the protection of the commerce clause of the federal constitution, there must be a continuous movement of the merchandise from one state to another in the actual course of delivery, but if that movement is interrupted by natural causes beyond the control of the shipper, a temporary halting will not subject the property to local taxation." The New Jersey Supreme Court held in the case of *State, Detmold & Cox, Pros.,* v. *Engle, Receiver, &c.,* 34 *N. J. L.* 425, 427, that "Property in transit through the state * * * is not to be considered as having a *situs*

within such state for purposes of taxation." And in the case of *State, Lehigh and Wilkesbarre Coal Co., Pros., v. Carrigan,* 39 *Id.* 36, our Supreme Court held that "The transportation of property is a constituent part of commerce, and a tax upon such property in its transportation from state to state, is a regulation of commerce among the states, and cannot constitutionally be imposed under state authority."

The assessments made by the assessor of the Borough of Edgewater, which are the subject-matter of these appeals, were invalid. The oil levied upon was in transit through the state and not subject to taxation in this state. The judgment of the Bergen County Board of Taxation sustaining the 1943 assessment here under appeal will be reversed and the assessment canceled. The judgment of the Bergen County Board of Taxation canceling the 1944 assessment will be affirmed, and the appeal of the Borough of Edgewater will be dismissed.